IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | No.   CV   (   ) |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DAVID L. JOHNSTON, D.O. and | ) | June 11, 2015 |
| OSTEOPATHIC WELLNESS | ) | |
| CENTER, LLC | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## UNITED STATES' COMPLAINT

Plaintiff United States of America ("United States") files this complaint against defendants David L. Johnston, D.O. and Osteopathic Wellness Center, LLC (collectively, "Johnston" or "defendants") to recover monies that defendants wrongfully obtained from Federal health care programs through false or fraudulent claims for payment.  For its causes of action, the United States alleges as follows:

## NATURE OF ACTION

1. The United States brings this action to recover statutory damages and civil penalties under the False Claims Act, 31 U.S.C. §§ 3729-3733.  The United States also brings this action to recover all available damages and other monetary relief under the common law or equitable theories of unjust enrichment and payment by mistake of fact.

## JURISDICTION

2. This Court has subject matter jurisdiction to entertain this False Claims Act action under 28 U.S.C. §§ 1331 and 1345. The Court possesses supplemental jurisdiction to entertain the common law and equitable causes of action pursuant to 28 U.S.C. § 1367(a).

3. This Court has personal jurisdiction over defendants pursuant to 31 U.S.C. § 3732(a), because defendants reside in, and/or transact and have transacted business in this District, and because defendants committed acts within this District that violated 31 U.S.C. § 3729.

## VENUE

4. Venue is proper in the District of Connecticut under 31 U.S.C. § 3732 and 28 U.S.C. § 1391(b) and (c) because defendants reside and/or transact business in this District, and because defendants committed acts within this District that violated 31 U.S.C. § 3729.

## PARTIES

5. The United Sates brings this action on behalf of the Department of Health and Human Services ("HHS") and the Centers for Medicare and Medicaid Services ("CMS"), which administers the Medicare program.

6. Defendant Johnston is an individual residing in Ridgefield, Connecticut.

7. At all times relevant to this Complaint, Johnston was an osteopathic physician licensed to practice medicine by the State of Connecticut.

8. Johnston practiced under the name of Osteopathic Wellness Center, LLC ("OWC"), a limited liability company organized under the laws of the State of Connecticut, and having a principal office in Ridgefield, Connecticut.

9. Johnston was the only principal of OWC.

## THE FALSE CLAIMS ACT

10. The FCA, 31 USC §§ 3729-3733, as amended by the Fraud Enforcement and Recovery Act of 2009, P.L. 111-21, § 4(f), 123 Stat. 1621, provides, in pertinent part:

(a) Liability for certain acts.

In general. Subject to paragraph (2), any person who -- (A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim….is liable to the United States Government….

(b) Definitions.   For purposes of this section—

(1) the terms "knowing" and "knowingly" (A) mean that a person, with respect to information (i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information; and (B) require no proof of specific intent to defraud;

(2) the term "claim" (A) means any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that (i) is presented to an officer, employee, or agent of the United States; or (ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government (I) provides or has provided any portion of the money or property requested or demanded; or (II) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded.

31 U.S.C. § 3729.

11. The FCA, at 31 U.S.C. § 3729(a)(1), provides that a person is liable to the United States Government for three times the amount of damages which the Government sustains because of the act of that person, plus a civil penalty of $5,500 to $11,000 per false claim.

**THE MEDICARE PROGRAM**

12. Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk-1, establishes the Health Insurance for the Aged and Disabled Program, popularly known as the Medicare Program.

13. The Secretary of HHS has oversight authority for the Medicare Program and administers the Program through CMS.

14. The Medicare Program is comprised of four parts: Part A, Part B, Part C and Part D.

15. Medicare Part B provides federal government funds to help pay for, among other things, services provided by osteopathic physicians.   Medicare Part B is funded by insurance premiums paid by enrolled Medicare beneficiaries and contributions from the federal treasury.

16. Eligible individuals, who are age 65 or older or disabled, may enroll in Part B to obtain benefits in return for payments of monthly premiums as established by HHS.

17. The Medicare Program often makes payments directly to service providers, such as osteopathic physicians, rather than to the Medicare beneficiary, who is the patient.

18. Medicare makes payments directly to providers when the beneficiary assigns to the provider, and the provider accepts assignment of, the right to payment.   When a beneficiary has assigned the right to payment to the provider, the provider may submit its bill directly to Medicare, rather than to the patient, for payment.

19. The United States provides reimbursement for Medicare claims through CMS.

20. CMS, in turn, contracts with private insurance carriers called "Medicare Administrative Contractors" (MACs) to administer, process, and pay Part B claims from the Federal Supplementary Medical Insurance Trust Fund (the Part B Trust Fund).

21. In this capacity, the MACs act on behalf of CMS.

22. The MACs in Connecticut between 2000 and July 31, 2008 was First Coast Services Options Inc.

23. Since August 1, 2008, the MAC in Connecticut is National Government Services, Inc.

24. The Medicare Program, through the Fiscal Intermediary, pays a significant portion of approved claims, usually 80%.

25. The Medicare beneficiary, or his or her supplemental insurance carrier, is required to pay the balance owed the provider. The beneficiary's payment is sometimes referred to as "co-pay". Beneficiaries also pay deductibles.

26. A provider must sign a Medicare Provider Enrollment Agreement to participate in the Medicare program.

27. When a provider signs a Medicare Provider Enrollment Agreement, the provider agrees to learn and adhere to Medicare and other federal health care program laws, regulations and program instructions.

28. Medicare requires compliance with Medicare and other federal health care program laws, regulations and program instructions as a precondition of governmental payment.

29. The Provider Enrollment Agreement states, "I understand the payment of a claim by Medicare or other federal health care programs is conditioned on the claim and the underlying transaction complying with such laws, regulations and program instructions…."

30. All healthcare providers, including osteopathic physicians, must comply with applicable statutes, regulations and guidelines, including those issued by the MAC, in order to be reimbursed by Medicare Part B.

31. Medicare covers only reasonable and necessary medical services.  42 U.S.C. § 1395y(a)(1)(A).

32. In order to bill the Medicare Part B Program, providers, such as osteopathic physicians, must submit a hard-copy claim form called CMS 1500, or an electronic equivalent, to the MAC.  42 C.F.R. § 424.32.

33. Medicare requires compliance with the terms on the claim form as a precondition of governmental payment.

34. On a claim form, a provider must state, among other things, the procedure(s) for which he is billing Medicare.

35. CMS regulations require providers use the American Medical Association's Current Procedural Terminology ("CPT") numeric codes to describe, in their claims to Medicare, the procedures or services they rendered.  45 C.F.R. §§ 162.1002(a)(5) and 162.1002(b)(1); Medicare Claims Processing Manual, Pub. 100-04, Chapter 23, Fee Schedule Administration and Coding Requirements, Section 20.

36. MACs issue local decisions on what procedures and services will be eligible for payment under the Medicare statute.

37. After December 7, 2003, such statements were called Local Coverage Determinations ("LCDs").

38. At all times relevant to this Complaint, Johnston and OWC were participating providers with Medicare.

39. Johnston and OWC submitted claims, or caused claims to be submitted, to the MAC in Connecticut using an electronic version of the CMS 1500 submission forms.

40. Johnston and OWC, either directly or through a billing company, submitted, or caused to be submitted, claims to the MAC for payment.

41. Medicare paid for the claims Johnson and OWC submitted, or caused to be submitted.

## ALLEGATIONS

42. When submitting, or causing to be submitted, claims to the Medicare program, as set forth below, Johnston and OWC acted with actual knowledge, deliberate ignorance or reckless disregard of the laws, regulations and guidance applicable to Federal healthcare programs.

43. In or about 2009, Johnston hired a licensed massage therapist to work at Johnston's practice.

44. The massage therapist was not a Medicare provider.

45. Medicare does not recognize massage therapists as providers.

46. The Medicare Program Integrity Manual, Ch. 15.4.8, specifically indicates that "Licensed Massage Therapists" are "not eligible to participate" in the Medicare program.

47. According to the OWC Practitioner's Agreement between Johnston and the massage therapist, Johnston hired the massage therapist to perform "cranial sacral therapy, brain curriculum, lymphatic drainage and energy work."

48. According to the OWC Practitioner's Agreement between Johnston and the massage therapist, the massage therapist was to be paid 50% of the fees collected from the patients and/or insurance companies.

49. Beginning in or about 2009, the massage therapist began working at Johnston's practice approximately two and a half days per week.

50. The massage therapist would regularly see patients on his own, without Johnston or any other physician present in the treatment room.

51. The massage therapist would also see patients on his own when no physician was present in the office suite at all.

52. The massage therapist had his own schedule of patients.

53. The massage therapist would fill out treatment notes for his patients.

54. The massage therapist only provided massage therapy, cranial sacral therapy, brain curriculum, lymphatic drainage, and energy work, to Medicare patients at Johnston's practice.

55. Even though the massage therapist was only providing massage therapy, cranial sacral therapy, brain curriculum, lymphatic drainage, and energy work to the Medicare patients at Johnston's practice, Johnston and OWC nevertheless submitted, or cause to be submitted, claims to Medicare for the following services supposedly provided by the massage therapist to Medicare patients: evaluation and management services (e.g. CPT code 99213 or 99214); osteopathic manipulative treatment (e.g. CPT code 98929); and physical therapy services (e.g. CPT codes 97112 and 97530).

56. The massage therapist did not provide the evaluation and management services, osteopathic manipulative treatment, or physical therapy services that Johnston and OWC submitted, or caused to be submitted, to the Medicare Program.

57. The massage therapist only provided massage therapy and related services set forth in the Practitioner's Agreement, outlined above.

58. Accordingly, Johnston and OWC submitted, or caused to be submitted, claims to the Medicare program for services that were not rendered.

59. In addition, the Connecticut Local Coverage Determination for Outpatient Physical and Occupational Therapy Services, L26884, effective in Connecticut 8/1/08, makes it clear that "massage therapists…are not considered qualified therapy professionals and may not bill their services under the Medicare therapy benefit, even if performed under the supervision of a qualified therapist."

60. The Medicare Benefit Policy Manual, Chapter 15, Section 230.5 indicates that "[r]egardless of any state licensing that allows other health professionals to provide therapy services, Medicare is authorized to pay only for services provided by those trained specifically in physical therapy, occupational therapy or speech-language pathology.  That at means that the services of athletic trainers, massage therapists, recreation therapists, kinesiotherapists, low vision specialists or any other profession may not be billed as therapy services."

61. The scope of practice of a massage therapist is limited under Connecticut law.

62. Connecticut General Statute Ch. 384a(d), which defines the scope of massage therapy, states that "Massage therapy does not encompass diagnosis, the prescribing of drugs or medicines, spinal or other joint manipulation, nor any service or procedure for which a

license to practice medicine, chiropractic, naturopathy, physical therapy, or podiatry is required by law."

63. Johnston and OWC were improperly paid approximately $135,000 by Medicare for services allegedly provided by the massage therapist which were, in fact, not rendered.

## CLAIMS

### FIRST CAUSE OF ACTION
(FALSE CLAIMS ACT: PRESENTMENT OF FALSE CLAIMS)
31 U.S.C. § 3729(A)(1)(A)

64. The United States re-alleges and incorporates by reference paragraphs 1 through 63 as though fully set forth herein.

65. Defendants knowingly presented false or fraudulent claims for payment, or knowingly caused false or fraudulent claims for payment to be presented, to the United States.

66. By virtue of this conduct, the United States suffered damages and therefore is entitled to statutory damages under the False Claims Act, to be determined at trial, plus a civil penalty for each violation.

### SECOND CAUSE OF ACTION
(False Claims Act: Making or Using False Record or Statement)
31 U.S.C. § 3729(a)(1)(B)

67. The United States re-alleges and incorporates by reference paragraphs 1 through 63 as though fully set forth herein.

68. Defendants knowingly made, used, or caused to be made or used, false records or false statements material to getting false or fraudulent claims paid or approved by the United States.

69.     By virtue of this conduct, the United States suffered damages and therefore is entitled to statutory damages under the False Claims Act, to be determined at trial, plus a civil penalty for each violation.

### THIRD CAUSE OF ACTION
(Unjust Enrichment)

70.     This is a common law claim for unjust enrichment.   This Court has jurisdiction pursuant to 28 U.S.C. § 1345.

71.     Plaintiff realleges and incorporates by reference paragraphs 1 through 63 as though fully set forth herein.

72.     By submitting claims for payment for services that were provided by a massage therapist, the defendants received or retained certain Government funds to which they were not entitled.

73.     As a result of the acts set forth in this count, the defendants were unjustly enriched at the expense of the United States, under circumstances dictating that, in equity and good conscience, the money should be returned to the United States.

### FOURTH CAUSE OF ACTION
(Payment By Mistake)

74.     This is a common law claim for payment by mistake.   This Court has jurisdiction pursuant to 28 U.S.C. § 1345.

75.     Plaintiff realleges and incorporates by reference paragraphs 1 through 63 as though fully set forth herein.

76. By submitting claims for payment for services that were provided by a massage therapist, the defendants caused the United States to pay the defendants certain Government funds to which they were not entitled.

77. At the time the United States made such payments, the United States was unaware of the defendants' conduct described in the Count. The United States' erroneous belief was material to making the payments at issue. Had the United States known of the conduct at issue, it would not have made the payments it did.

78. As a result of the acts set forth in this count, the United States has been damaged in an amount to be determined at trial, and is entitled to recover these monies which were paid to the defendants by mistake.

## **PRAYER FOR RELIEF**

WHEREFORE, the United States requests that judgment be entered in its favor and against defendants as follows:

On the First and Second Causes of Action under the False Claims Act, against the defendants, jointly and severally, for the amount of statutory damages, such civil penalties, fees and costs, as provided by law, together with all such further relief as may be just and proper.

On the Third and Fourth Causes of Action, for unjust enrichment and payment by mistake, for the damages sustained and/or amounts by which the defendants were unjustly enriched or by which defendant retained illegally obtained monies, plus interest, costs, and expenses, and all such

further relief as may be just and proper.

    Respectfully submitted,

    DEIRDRE M. DALY
    United States Attorney

    */s/ John B. Hughes*
    JOHN B. HUGHES
    Assistant U.S. Attorney
    Chief, Civil Division
    Federal Bar No. CT05289
    157 Church Street
    New Haven, Connecticut 06510
    (203) 821-3700 (phone)
    (203) 773-5373 (fax)
    John.Hughes2@usdoj.gov

    */s/ Richard M. Molot*
    RICHARD M. MOLOT
    Assistant United States Attorney
    Federal Bar No. CT21676
    157 Church Street
    New Haven, Connecticut 06510
    (203) 821-3700 (phone)
    (203) 773-5373 (fax)
    Richard.Molot2@usdoj.gov

    Attorneys for the United States