UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | No. 3:15 CV 905 (wwe) |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | STIPULATED JUDGMENT |
| | ) | |
| DAVID L. JOHNSTON and OSTEOPATHIC | ) | |
| WELLNESS CENTER, LLC | ) | |
| | ) | |
| Defendants. | ) | |

### STIPULATED JUDGMENT

IT IS HEREBY STIPULATED AND AGREED, by and between the undersigned, that the parties have negotiated a settlement in the above-referenced matter, which settlement took effect on June 9, 2015 (the Settlement Agreement); and that

As part of that negotiated settlement, David L. Johnston, D.O. and Osteopathic Wellness Center, LLC, pursuant to Fed. R. Civ. 54, hereby consent to entry of judgment against them, and in favor of the plaintiff, the United States, in the amount of $270,528, plus interest, as set forth in the Settlement Agreement. A copy of that Settlement Agreement is attached as Exhibit A hereto, and is incorporated herein by reference.

The parties shall each bear their own costs, fees, and expenses.

Respectfully Submitted,

**ON BEHALF OF THE UNITED STATES**

Dated: 6/9/15

DEIRDRE M. DALY
Attorney for the United States

BY: _____

RICHARD M. MOLOT

1

Assistant United States Attorney
Federal Bar No. CT21676
157 Church Street
New Haven, Connecticut 06510
(203) 821-3700
Richard.Molot2@usdoj.gov

**ON BEHALF OF DAVID L. JOHNSTON, D.O.**

Dated: 5-18-2015

David L. Johnston, D.O.

Dated: 5/18/15        BY:

BRIAN SPEARS, ESQ.
Brian Spears, LLC
2425 Post Road
Suite 203
Southport, CT 06890
(203) 292-9682
mbspears@brianspearsllc.com
Counsel for David L. Johnston

**ON BEHALF OF OSTEOPATHIC WELLNESS
CENTER, LLC**

Dated: 5-18-2015

David L. Johnston, D.O.
President

Dated: 5/18/15        BY:

BRIAN SPEARS, ESQ.
Brian Spears, LLC
2425 Post Road
Suite 203
Southport, CT 06890
(203) 292-9682
mbspears@brianspearsllc.com
Counsel for Osteopathic Wellness Center

2

## CERTIFICATION OF SERVICE

I hereby certify that on ∧ June 15 , 2015, a true and correct copy of the Stipulated Judgment

was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice

of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing

system or by mail to anyone unable to accept electronic filing as indicated on the Notice of

Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.


/s/ Richard M. Molot
Richard Molot
Assistant United States Attorney

3

## SETTLEMENT AGREEMENT

This Settlement Agreement (Agreement) is entered into among the United States of America, acting through the United States Department of Justice and on behalf of the Office of Inspector General (OIG-HHS) of the Department of Health and Human Services (HHS) (collectively the "United States"), and David L. Johnston, D.O. ("Johnston") and Osteopathic Wellness Center, LLC ("OWC") (hereafter collectively referred to as "the Parties"), through their authorized representatives.

## RECITALS

A.    Johnston is an osteopathic physician licensed to practice medicine by the State of Connecticut.  OWC is a Connecticut limited liability company, owned by Johnston, having a principal office in Ridgefield, Connecticut.  Johnston practices osteopathic medicine under the name of OWC.

B.    The United States contends that Johnston and OWC submitted or caused to be submitted claims for payment to the Medicare Program (Medicare), Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk-1.

C.    The United States contends that it has certain civil claims against Johnston and OWC arising from submitting claims or causing claims to be submitted to the Medicare program for evaluation and management services, osteopathic manipulative treatment services, and physical therapy services, allegedly provided by a massage therapist, which were not rendered, during the period from January 1, 2009, through July 20, 2012.  That conduct is referred to below as the Covered Conduct.

D.    This Settlement Agreement is neither an admission of liability by Johnston or OWC nor a concession by the United States that its claims are not well founded.

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Settlement Agreement, the Parties agree and covenant as follows:

<u>TERMS AND CONDITIONS</u>

1.      Johnston and OWC shall pay to the United States Two Hundred Seventy Thousand Five Hundred Twenty Eight Dollars ($270,528) ("Settlement Amount"), as follows:

    a.  One Hundred Thirty Five Thousand ($135,000), to be paid no later than June 1, 2015, by electronic funds transfer pursuant to written instructions to be provided by the United States Attorney's Office for the District of Connecticut.

    b.  The remaining One Hundred Thirty Five Thousand Five Hundred Twenty Eight Dollars ($135,528), plus interest, within four (4) years of the Effective Date of this Agreement, pursuant to the payment schedule set forth in the promissory note (the Note), attached as Exhibit A to this Agreement.  Interest will be calculated based on the February 2015 Medicare Trust Fund Rate of 1.625%.  Johnston and OWC agree that they are jointly and severally liable for the Settlement Amount.

2.      Johnston and OWC agree to execute, contemporaneously with this Agreement, the Note, in the form attached hereto as Exhibit A, and a Stipulated Judgment, in the form attached hereto as Exhibit B.  On or after the Effective Date of this Agreement, the Government will file a civil complaint against Johnston and OWC. Promptly after the filing of the civil complaint, the Government will move, on consent,

2

for entry of judgment in favor of the United States and against Johnston and OWC, as set forth in the Stipulated Judgment, and the Government will file the Stipulated Judgment with the Court. In addition to the Note and the Stipulated Judgment, the payment of the Settlement Amount shall be secured by a Mortgage on property located at 158 Danbury Road, Ridgefield, Connecticut, in the form attached hereto as Exhibit C, which Johnston and OWC agree will be executed by Danbury Road Wellness Center, LLC, the record owner of the property, contemporaneously with this Agreement.

3.     Subject to the exceptions in Paragraph 4 (concerning excluded claims) below, and conditioned upon Johnston and OWC's full payment of the Settlement Amount, and subject to Paragraph 17, below (concerning bankruptcy proceedings commenced within 91 days of the Effective Date of this Agreement or any payment made under this Agreement), the United States releases Johnston and OWC from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; or the common law theories of payment by mistake, unjust enrichment, and fraud.

4.     Notwithstanding the release given in paragraph 3 of this Agreement, or any other term of this Agreement, the following claims of the United States are specifically reserved and are not released:

a.     Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

b.     Any criminal liability;

3

c.      Except as explicitly stated in this Agreement, any administrative
liability, including mandatory or permissive exclusion from
Federal health care programs;

d.      Any liability to the United States (or its agencies) for any conduct
other than the Covered Conduct;

e.      Any liability based upon obligations created by this Agreement;

f.      Any liability for personal injury or property damage or for other
consequential damages arising from the Covered Conduct.

5.      a.      In compromise and settlement of the rights of OIG-HHS to exclude

Johnston pursuant to 42 U.S.C. §§ 1320a-7(a)(3) and (b)(7), based upon Johnston's

agreement to plead guilty to Health Care Fraud, in violation of 18 U.S.C. § 1347, and the

Covered Conduct, and in compromise and settlement of the rights of OIG-HHS to

exclude OWC pursuant to 42 U.S.C. §§ 1320a-7(b)(7) and (b)(8) based upon the Covered

Conduct and Johnston's ownership and control interest and/or managerial role in OWC,

Johnston and OWC agree to be excluded under these statutory provisions from Medicare,

Medicaid, and all other Federal health care programs, as defined in 42 U.S.C. § 1320a-

7b(f), for a period of five years.  The exclusions of Johnston and OWC shall be effective

upon the Effective Date of this Agreement.

b.      Such exclusions shall have national effect.  Federal health care

programs shall not pay anyone for items or services, including administrative and

management services, furnished, ordered, or prescribed by Johnston and/or OWC in any

capacity while Johnston and OWC are excluded.  This payment prohibition applies to

Johnston, OWC, and all other individuals and entities (including, for example, anyone

4

who employs or contracts with Johnston and/or OWC, and any hospital or other provider where Johnston and/or OWC provide services). The exclusion applies regardless of who submits the claim or other request for payment. Violation of the conditions of the exclusion may result in criminal prosecution, the imposition of civil monetary penalties and assessments, and an additional period of exclusion. Johnston and OWC further agree to hold the Federal health care programs, and all federal beneficiaries and/or sponsors, harmless from any financial responsibility for items or services furnished, ordered, or prescribed to such beneficiaries or sponsors after the effective date of the exclusion. Johnston and OWC waive any further notice of the exclusion and agree not to contest such exclusion either administratively or in any state or federal court.

    c. Reinstatement to program participation is not automatic. If Johnston and OWC wish to be reinstated, Johnston and OWC must submit a written request for reinstatement to the OIG in accordance with the provisions of 42 C.F.R. §§ 1001.3001-.3005. Such request may be made to the OIG no earlier than 120 days prior to the expiration of the five-year period of exclusion. Reinstatement becomes effective upon application by Johnston and OWC, approval of the application by the OIG, and notice of reinstatement by the OIG. Obtaining another license, moving to another state, or obtaining a provider number from a Medicare contractor, a state agency, or a Federal health care program does not reinstate Johnston's and/or OWC's eligibility to participate in these programs.

    6. Johnston and OWC shall be deemed in default of this Agreement on the date of occurrence of any of the following events (Events of Default):

5

(a).    Failure to Make Timely Payments:  Failure by Johnston and OWC to pay any amount provided for in Paragraph 1 of this Agreement and/or the Note attached hereto as Exhibit A, when such payment is more than five days late; or

(b).    Commencement of Bankruptcy or Reorganization Proceeding:  If prior to making the full payment of the Settlement Amount due under Paragraph 1 above, (i) Johnston and/or OWC commence any case, proceeding, or other action (A) under any law relating to bankruptcy, insolvency, reorganization or relief of debtors, seeking to have any order for relief of debtors, or seeking to adjudicate them as bankrupt or insolvent, or (B) seeking appointment of a receiver, trustee, custodian or other similar official for them or for all or any substantial part of their assets; or (ii) there shall be commenced against Johnston and/or OWC any such case, proceeding or other action referred to in clause (i) that results in the entry of an order for relief and any such order remains undismissed, or undischarged or unbonded for a period of thirty (30) days; or (iii) Johnston and/or OWC takes any action authorizing, or in furtherance of, or indicating their consent to, approval of, or acquiescence in, any of the acts set forth above in this subparagraph.

7.    On the date of any such Event of Default as defined in Paragraph 6 above, the United States agrees that it will provide written notice of the default and an opportunity for Johnston and OWC to cure said default within fifteen (15) business days of receipt of the notice.  Notification of default will be sent by first class mail addressed

6

to the attorney for Johnston and OWC, Brian Spears, LLC, 2425 Post Road, Suite 203, Southport, CT 06890. Upon default, which is not cured within fifteen (15) business days of receipt of notice of default, as set forth above, the full Settlement Amount, plus interest, will become immediately due and payable.

8.     Upon declaration of default, the United States may exercise, at its sole option, one or more of the following rights, as applicable: (a) declare this Agreement breached, and proceed against Johnston and/or OWC for any claims, including those to be released by this agreement; (b) take any action to execute and collect on the stipulated judgment against Johnston and/or OWC; (c) file an action for specific performance of the Agreement and/or the Promissory Note; (d) offset the remaining unpaid balance, inclusive of interest, from any amounts due and owing to Johnston and/or OWC by any department, agency, or agent of the United States at the time of default; (e) exercise any other right granted by law, or under the terms of this Agreement, or recognizable at common law or in equity, including, but not limited to, foreclosing on the Mortgage. Johnston and OWC agree not to contest any offset imposed pursuant to this provision, either administratively or in any State or Federal court.

9.     In the Event of Default as defined in Paragraph 6, above, OIG-HHS may exclude Johnston and OWC from participating in all Federal health care programs until Johnston and OWC pay the Settlement Amount as set forth in Paragraph 1, above. OIG-HHS will provide written notice of any such exclusion to Johnston and OWC. Johnston and OWC waive any further notice of the exclusion under 42 U.S.C. § 1320a-7(b)(7), and agree not to contest such exclusion either administratively or in any state or federal court. Reinstatement to program participation is not automatic. If at the end of the period of

7

*Settlement Agreement*
*between United States, Johnston*
*and OWC*

exclusion Johnston and OWC wish to apply for reinstatement, Johnston and OWC must submit a written request for reinstatement to OIG-HHS in accordance with the provisions of 42 C.F.R. §§ 1001.3001-.3005. Johnston and OWC will not be reinstated unless and until OIG-HHS approves such request for reinstatement.

10.     Johnston and OWC waive and shall not assert any defenses Johnston and OWC may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action. Nothing in this paragraph or any other provision of this Agreement constitutes an agreement by the United States concerning the characterization of the Settlement Amount for purposes of the Internal Revenue laws, Title 26 of the United States Code.

11.     Johnston and OWC fully and finally release the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that Johnston and OWC have asserted, could have asserted, or may assert in the future against the United States, and its agencies, employees, servants, and agents, related to the Covered Conduct and the United States' investigation and prosecution thereof.

12.     The Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicare contractor (e.g., Medicare Administrative Contractor, fiscal intermediary, carrier) or any state payer, related to the Covered Conduct; and Johnston and OWC agree not to resubmit to any

*Settlement Agreement*
*between United States, Johnston*
*and OWC*

Medicare contractor or any state payer any previously denied claims related to the Covered Conduct, and agree not to appeal any such denials of claims.

13.     Johnston and OWC agree to the following, if applicable:

        a.     Unallowable Costs Defined:  All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk-1 and 1396-1396w-5; and the regulations and official program directives promulgated thereunder) incurred by or on behalf of Johnston and OWC, its present or former officers, directors, employees, shareholders, and agents in connection with:

        (1)     the matters covered by this Agreement and any related plea agreement;

        (2)     the United States' audit(s) and civil and any criminal investigation(s) of the matters covered by this Agreement;

        (3)     Johnston and OWC's investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil and any criminal investigation(s) in connection with the matters covered by this Agreement (including attorney's fees);

        (4)     the negotiation and performance of this Agreement and any Plea Agreement;

        (5)     the payment Johnston and OWC make to the United States pursuant to this Agreement

9

are unallowable costs for government contracting purposes and under the Medicare

Program, Medicaid Program, TRICARE Program, and Federal Employees Health

Benefits Program (FEHBP) (hereinafter referred to as Unallowable Costs).

      b.    Future Treatment of Unallowable Costs:  Unallowable Costs shall be

separately determined and accounted for by Johnston and OWC, and Johnston and OWC

shall not charge such Unallowable Costs directly or indirectly to any contracts with the

United States or any State Medicaid program, or seek payment for such Unallowable

Costs through any cost report, cost statement, information statement, or payment request

submitted by Johnson or OWC, or any of its subsidiaries or affiliates to the Medicare,

Medicaid, TRICARE, or FEHBP Programs.

      c.    Treatment of Unallowable Costs Previously Submitted for Payment:

Johnston and OWC further agree that within 90 days of the Effective Date of this

Agreement they shall identify to applicable Medicare and TRICARE fiscal

intermediaries, carriers, and/or contractors, and Medicaid and FEHBP fiscal agents, any

Unallowable Costs (as defined in this Paragraph) included in payments previously sought

from the United States, or any State Medicaid program, including, but not limited to,

payments sought in any cost reports, cost statements, information reports, or payment

requests already submitted by Johnston or OWC or any of its subsidiaries or affiliates,

and shall request, and agree, that such cost reports, cost statements, information reports,

or payment requests, even if already settled, be adjusted to account for the effect of the

inclusion of the unallowable costs.  Johnston and OWC agree that the United States, at a

minimum, shall be entitled to recoup from Johnston and OWC any overpayment plus

applicable interest and penalties as a result of the inclusion of such Unallowable Costs on

10

previously-submitted cost reports, information reports, cost statements, or requests for payment.

Any payments due after the adjustments have been made shall be paid to the United States pursuant to the direction of the Department of Justice and/or the affected agencies. The United States reserves its rights to disagree with any calculations submitted by Johnston or OWC or any of its subsidiaries or affiliates on the effect of inclusion of Unallowable Costs (as defined in this Paragraph) on Johnston or OWC or any of its subsidiaries or affiliates' cost reports, cost statements, or information reports.

    d.    Nothing in this Agreement shall constitute a waiver of the rights of the United States to audit, examine, or re-examine Johnston and OWC's books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this Paragraph.

    14.    This Agreement is intended to be for the benefit of the Parties only. The Parties do not release any claims against any other person or entity, except to the extent provided for in Paragraph 15 (waiver for beneficiaries paragraph), below.

    15.    Johnston and OWC agree that they waive and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third party payors based upon the claims defined as Covered Conduct.

    16.    Johnston and OWC warrant that they have reviewed their financial situation and that they currently are solvent within the meaning of 11 U.S.C. §§ 547(b)(3) and 548(a)(1)(B)(ii)(I), and shall remain solvent following payment to the United States of the Settlement Amount. Further, the Parties warrant that, in evaluating whether to

11

*Settlement Agreement*
*between United States, Johnston*
*and OWC*

execute this Agreement, they (a) have intended that the mutual promises, covenants, and obligations set forth constitute a contemporaneous exchange for new value given to Johnston and OWC, within the meaning of 11 U.S.C. § 547(c)(1), and (b) conclude that these mutual promises, covenants, and obligations do, in fact, constitute such a contemporaneous exchange. Further, the Parties warrant that the mutual promises, covenants, and obligations set forth herein are intended to and do, in fact, represent a reasonably equivalent exchange of value that is not intended to hinder, delay, or defraud any entity to which Johnston or OWC were or became indebted to on or after the date of this transfer, within the meaning of 11 U.S.C. § 548(a)(1).

17.     If within 91 days of the Effective Date of this Agreement or of any payment made under this Agreement, Johnston or OWC commences, or a third party commences, any case, proceeding, or other action under any law relating to bankruptcy, insolvency, reorganization, or relief of debtors (a) seeking to have any order for relief of Johnston or OWC's debts, or seeking to adjudicate Johnston or OWC as bankrupt or insolvent; or (b) seeking appointment of a receiver, trustee, custodian, or other similar official for Johnston or OWC or for all or any substantial part of Johnston or OWC's assets, Johnston and OWC agree as follows:

a.     Johnston and OWC's obligations under this Agreement may not be avoided pursuant to 11 U.S.C. § 547, and Johnston and OWC shall not argue or otherwise take the position in any such case, proceeding, or action that: (i) Johnston and OWC's obligations under this Agreement may be avoided under 11 U.S.C. § 547; (ii) Johnston or OWC were insolvent at the time this Agreement was entered into, or became insolvent as a result of the payment made to the United States; or (iii) the mutual

12

promises, covenants, and obligations set forth in this Agreement do not constitute a contemporaneous exchange for new value given to Johnston or OWC.

> b.    If Johnston or OWC's obligations under this Agreement are avoided for any reason, including, but not limited to, through the exercise of a trustee's avoidance powers under the Bankruptcy Code, the United States, at its sole option, may rescind the releases in this Agreement and bring any civil and/or administrative claim, action, or proceeding against Johnston or OWC for the claims that would otherwise be covered by the releases provided in Paragraph 3, above. Johnston and OWC agree that (i) any such claims, actions, or proceedings brought by the United States are not subject to an "automatic stay" pursuant to 11 U.S.C. § 362(a) as a result of the action, case, or proceedings described in the first clause of this Paragraph, and Johnston and OWC shall not argue or otherwise contend that the United States' claims, actions, or proceedings are subject to an automatic stay; (ii) Johnston and OWC shall not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any such civil or administrative claims, actions, or proceeding that are brought by the United States within ninety (90) calendar days of written notification to Johnston and OWC that the releases have been rescinded pursuant to this Paragraph, except to the extent such defenses were available on the Effective Date of this Agreement; and (iii) the United States has a valid claim against Johnston and OWC for treble damages and penalties under the False Claims Act, and the United States may pursue its claim in the case, action, or proceeding referenced in the first clause of this Paragraph, as well as in any other case, action, or proceeding.

13

c.      Johnston and OWC acknowledge that their agreements in this Paragraph are provided in exchange for valuable consideration provided in this Agreement.

18.      Johnston and OWC have provided sworn financial disclosure statements and related financial documents ("Financial Statements") to the United States and the United States has relied on the accuracy and completeness of those Financial Statements in reaching this Agreement.  Johnston and OWC warrant that the Financial Statements are thorough, accurate, and complete.  Johnston and OWC further warrant that they do not own or have an interest in any assets which have not been disclosed in the Financial Statements, and that Johnston and OWC have made no misrepresentations on, or in connection with, the Financial Statements.  In the event the United States learns of asset(s) in which Johnston and OWC had an interest at the time of this Agreement which were not disclosed in the Financial Statements, or in the event the United States learns of a misrepresentation by Johnston and OWC on, or in connection with, the Financial Statements, and in the event such nondisclosure or misrepresentation changes the estimated net worth of Johnston and OWC set forth on the Financial Statements by $25,000.00 or more, the United States may at its option: (1) rescind this Agreement and file suit based on the Covered Conduct; (2) execute on the Stipulated Judgment; or (3) let the Agreement stand and collect the full Settlement Amount plus one hundred percent (100%) of the value of the net worth Johnston and OWC previously undisclosed. Johnston and OWC agree not to contest any collection action undertaken by the United States pursuant to this provision.

14

19.     In the event that the United States, pursuant to paragraph 18 above, opts to rescind this Agreement, Johnston and OWC expressly agree not to plead, argue or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel or similar theories, to any civil or administrative claims which (a) are filed by the United States within 90 calendar days of written notification to Johnston and OWC that this Agreement has been rescinded, and (b) relate to the Covered Conduct.

20.     Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

21.     Each party and signatory to this Agreement represents that it freely and voluntarily enters in to this Agreement without any degree of duress or compulsion.

22.     This Agreement is governed by the laws of the United States.  The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the District of Connecticut.  For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

23.     This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

24.     The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

25.     This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

15

*Settlement Agreement*
*between United States, Johnston*
*and OWC*

26.     This Agreement is binding on Johnston and OWC's successors, transferees, heirs, and assigns.

27.     All parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

28.     This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement).  Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

THE UNITED STATES OF AMERICA

DATED: _6/9/15_     BY: _____

JOHN B. HUGHES
Assistant United States Attorney
Chief, Civil Division
District of Connecticut

DATED: _6/9/15_     By: _____

RICHARD M. MOLOT
Assistant United States Attorney
District of Connecticut

DATED: _6/8/15_     BY: _____

ROBERT K. DECONTI
Assistant Inspector General for Legal Affairs
Office of Counsel to the Inspector General
Office of Inspector General
United States Department of Health and Human
**Services**

17

*Settlement Agreement*
*between United States, Johnston*
*and OWC*

DAVID JOHNSTON, D.O

DATED: 5-18-2015   BY: _____ D.O.
                        DAVID JOHNSTON, D.O.

DATED: 5/18/15   BY: _____
                      BRIAN SPEARS, ESQ.
                      Counsel for David Johnston, D.O.


OSTEOPATHIC WELLNESS CENTER, LLC

DATED: 5-18-2015   BY: _____ D.O.
                        DAVID JOHNSTON, D.O.
                        President, Osteopathic Wellness
                        Center, LLC

DATED: 5/18/15   BY: _____
                      BRIAN SPEARS, ESQ.
                      Counsel for Osteopathic Wellness
                      Center, LLC

18